[Civ. No. 20177. First Dist., Div. Two. Dec. 19, 1961.]

FRANK J. YOUNGDALE, as Executor, etc., Plaintiff and Appellant, v. HENRY GAHWILER, Defendant and Respondent.

Gilbert Moody and J. Hilary Cook for Plaintiff and Appellant.

Edward T. Koford for Defendant and Respondent.

AGEE, J.—After the statute of limitations had barred the remedy upon the promissory note in question, defendant wrote three letters which plaintiff contends constituted an unqualified and unconditional acknowledgment of the indebtedness, thus giving rise to an *implied* unqualified and unconditional promise to pay. Conversely, defendant contends that his promise to pay was *express,* not implied, and was conditioned upon his being able to make financial arrangements to meet the obligation. Obviously, an *express* promise necessarily excludes a promise by implication. (*Sterling* v. *Title Ins. & Trust Co.,* 53 Cal.App.2d 736, 743 [128 P.2d 31].) Plaintiff appeals from an adverse judgment.

 The general basis of an action such as this is well stated in *Rodgers* v. *Byers,* 127 Cal. 528, 530 [60 P. 42]: ''[W]hen the statute of limitations has barred the remedy upon the original obligation, and an acknowledgment or a promise made after such time is relied upon, the action is not upon the original obligation, but is upon the new acknowledgment, and the implied promise raised by the law, or is upon the new express promise.''

 If the promise to pay is express but conditional, then plaintiff must allege and prove the happening of the condition and the breach thereof by defendant. (*Rodgers* v. *Byers, supra,* p. 532; *Hayes* v. *O'Marr,* 81 Cal.App. 210, 212 [253 P. 749].) This, plaintiff did not do.

So the issue boils down to whether the letters written by defendant contained an express conditional promise to pay or only an express unqualified and unconditional acknowledgment of the indebtedness, from which the law implies an unconditional and unqualified promise to pay.

 The position of an appellate court in determining an issue based entirely upon writings is stated in *Meyer* v. *State Board of Equalization,* 42 Cal.2d 376, 381 [267 P.2d

258

257] : "The sole evidence being the written documents without qualifying testimony, their legal effect is a question of law, and the interpretation given to them by the trial court is not binding upon appeal . . . [Citations.]"

The note was for $5,000, and was secured by a mortgage. It was executed on February 9, 1948, by defendant and his wife, from whom he was later divorced. The payee was Olivia Olson, who died on November 25, 1957. Plaintiff was appointed as her executor on December 26, 1957. The three letters referred to above were written by defendant to the attorney for Miss Olson and, later, her executor, on March 26, 1957, January 24, 1958, and February 12, 1958, respectively.

Defendant has appended the written opinion of the trial court to his brief. It states therein: "There is no doubt that the letters acknowledged the debt. If they stopped here, the law would imply a promise to pay it forthwith. But they do not stop with a bare acknowledgment. The conditions under which defendant expected to make arrangements to pay, and which would have to be fulfilled before he would be able to do so, were discussed and specified."

Defendant's letter of March 26, 1957, was in reply to a letter of March 21, 1957, from the attorney for Olivia Olson, the payee of the note. Defendant's letter stated: "I am in receipt of your letter that Miss Olivia Olson wants her $5000.00 back she loaned to us. I can understand that very well and I'll see that we can make satisfactory arrangements. . . . But please have a little *pashen* so I be able to arrange things. . . . Naturally, I pay for her. This *possible* would not interest you just for your own information so you will hear from me very soon, as I always could get the money from the bank I presume." When defendant says, "Naturally, I pay for her," he is referring to his former wife, who was a cosigner of the note. In other words, defendant is expressly promising to pay on behalf of his wife as well as himself.

We agree with the trial court that the letter of March 26, 1957, was an express unconditional and unqualified acknowledgment of the debt and that the promise to pay was express but conditioned upon defendant being able to make financial arrangements to pay. And, as we have said, an express promise to pay necessarily excludes a promise by implication.

This is further borne out by defendant's next letter to the attorney, dated January 24, 1958, which states in part: "As you know, I am only half owner of the property concerning

the *morgage* (*shope* and empty lot)—the other half owner of the property is my former divorced wife A. Gahweiler. Although is the *morgage* made out on both of our names. This situation makes it very hard to handle and to settle it. I have not heard from Mrs. Gahweiler in Salinas yet.

. . . . . . . . . . . . . .

"4. I wonder if there is not a possibility that one of *thr* heirs would take over this *morgage* as his inheritance, which would be the best way out for both parties involved and besides a good investment, sure for everybody. Would you please be *though* kind to find this out for me? Maybe the Home would not mind doing me this favor.

"5. Did you inform Mrs. A. Gahweiler as you did me?"

Defendant's third letter to the attorney, dated February 12, 1958, states in part:

"Concerning the $5000 *morgage*, I wrote you *allready* in a former letter, that I asked My bank to take over the *morgage* and they told me, that they would not mind taking it over, if I would be the only owner of the property But because of the mixed up condition of the ownership with my divorced wife they *can not* do it.

"Though, when nobody of the heirs *want* to take it over, the only way out, as I see it, is when I would have enough time to save up the money in *around one Year.*

"Last year, I had to pay off the half ownership of my house to my divorced wife and all the debts she had made on purpose previous to the divorce, *allthough* the costs for the divorce, $600 on my truck, and the Painting of my house, inside and outside. Though I know, I would be able, to save the money for the *morgage* this year.

"In account of this, I would like to know, How much time I will have, to do it? When somebody, as I heard, is fighting the will, it probably will take a whole year, until *every thing* is *settelt*; and I know, in this time I can save up the $5000.

"Would you please be so kindly, to let me know about this situation and *although* what *you* think about it and what can be done?"

These letters without any question constitute an express unqualified and unconditional acknowledgment of the indebtedness but the promise to pay which is contained therein is to the effect that defendant will pay if arrangements can be made to borrow the money from the bank or if one of the beneficiaries under the will would take over the loan or if he

(defendant) were given "around one Year" to save up the money.

In *Rodgers* v. *Byers, supra,* a very similar situation was presented. The Supreme Court said, at page 531: "The promises are found in certain letters written by defendant to plaintiff. In one he says: 'I will liquidate that note as soon as I can get the money.' In the second he writes: 'I wish it was in my power to send you money at this time, but it is not. Will send you some as soon as I can get it. I hope to get money soon. Will sell cattle at first good offer.' In the third is this language: 'I have no intention of not paying the note, and will as soon as I can, but can't now.' In none of these letters is there an absolute and unconditional promise to pay. The promise in each case is made conditional upon the promisor's financial ability." The court expressly held that the plaintiff would not be permitted to reject the promise and rely upon an acknowledgment from which the law will imply a promise. "[I]t would have been necessary for the plaintiff to allege the promise and show the condition broken after defendant's ability to perform." (P. 532.)

To the same effect are: *Snyder* v. *Dederichs,* 39 Cal.App. 628 [179 P. 535]; *Morehouse* v. *Morehouse,* 140 Cal. 88 [73 P. 738]; *Hayes* v. *O'Marr,* 81 Cal.App. 210 [253 P. 749]; and *Maurer* v. *Bernardo,* 118 Cal.App. 290 [5 P.2d 36].

The fundamental question in each of these cases is whether the obligor made an unconditional promise to pay. And, as before stated, if he did not and the promise was conditional, then the obligee is required to allege and prove the happening of the condition and the breach of the promise.

We conclude that defendant's promise to pay was express and conditional and that plaintiff failed to allege or prove the existence of the condition and the breach thereof by defendant.

Judgment affirmed.

Kaufman, P. J., and Shoemaker, J., concurred.